Present—McKEAN, Chief Justice, SHIPPEN and SMITH, Justices of the Supreme Court; and RUSH, RIDDLE, ADDISON and COXE, President Judges of the Common Pleas.

#### LUDLOW, Plaintiff in error, v. BINGHAM. (a)

*Conflict of laws.—Attachment.—Practice.*

The law of the place where a promissory note first becomes binding as a valid contract, governs as to the rights of the parties.[1]

A promissory note, expressed in commercial form, was made in Philadelphia, dated there, and made payable at the bank of the United States, but it was delivered in New York: *Held*, that it was to be governed by the law of the latter place.

The note was indorsed in blank, and a foreign attachment was served on the maker, while the note was in the possession of the defendant in the attachment, who, after such service, passed the note to a third person, for a full consideration, without notice: *Held*, that the attachment could not be sustained.

This court can enter judgment for the plaintiff in error, without remitting the record to the court below, for that purpose.

IN ERROR. This was an action by the indorsee, against the maker of a promissory note; and the following case was submitted for the opinion of the court.

"Sometime about the end of December 1792, the defendant, for a full and valuable consideration, that is to say, in consideration of William Duer, of the city of New York, relinquishing to him (the defendant), his, the said William Duer's, right to a certain portion of a contract, made with the state

---

(a) The question involved in this cause had been argued in the supreme court; but before any opinion was given by the judges, and in order to avoid delay, a judgment was entered, by consent, for the defendant, on which the present writ of error was brought, with an agreement that the decision of the high court of errors and appeals, should also be binding in the cases of McEvers v. Bingham, Service v. Bingham, and McCrea v. Bingham, all depending in the supreme court on the same facts. The present report comprises the arguments in both courts.

[1] Tilden v. Blair, 21 Wall. 241; Ex parte Conrad, 8 Phila. 147; Wayne County Savings Bank v. Low, 81 N. Y. 566; Opdyke v. Merwin, 13 Hun 401; Weil v. Lange, 6 Daly 549; Bowen v. Bradley, 1 Sheld. 226; Hull v. Wheeler, 7 Abb. Pr. 411. And see Mott v. Wright, 4 Biss. 53.

Ludlow v. Bingham.

of Massachusetts, for *the purchase of a large tract of land, caused to be paid and delivered, at the city of New York, to the said William Duer, the several promissory notes in the declaration mentioned ; all of which were made by the defendant, payable at the Bank of the United States, to the order of Henry Knox, Esq., a citizen of Massachusetts, and indorsed in blank by him to the said William Duer, whose property they became by the said delivery ; and continued so to be, until he parted therewith, as hereafter mentioned.   On the 11th of May 1793, a foreign attachment issued out of the court of common pleas for Philadelphia county, at the suit of Nicholas Fish, a citizen of the state of New York, against the said William Duer, which was, on the same day, duly served in the hands of the defendant, with notice to him as garnishee ; and on executing a writ of inquiry, in the said attachment, the sum of 4103*l.* 15*s.* 6*d.*, Pennsylvania currency, was, on the 8th of March 1794, found due to the plaintiff therein, from the said William Duer, and judgment thereupon rendered, which judgment still remains in full force and unsatisfied.   At the time of issuing and serving the said attachment as aforesaid, the said notes remained in the possession, and were the property of the said William Duer, and continued so to be, until some time afterwards, in the same year, when they were paid away by him, in New York, to citizens of New York, for a full and valuable consideration, by delivery, and without his indorsement thereon ; and afterwards, they were severally paid away and delivered, in New York, by the persons so receiving them, respectively (before the bringing of the actions), citizens of New York (except McCrea, who is a citizen of Pennsylvania), respectively, for full and valuable considerations, and without any knowledge on their parts of the said attachment having been served or issued, other than such knowledge as may be deemed to result from the record of the said attachment, and the proceedings thereon ; and without any knowledge of the agreement so as aforesaid made between the said William Bingham and William Duer.   It is agreed, that promissory notes were, at the time of negotiating the said promissory notes, and still are, negotiated and considered, in New York, upon the same footing as foreign bills of exchange, according to the custom of merchants.

   " Questions submitted to the opinion of the judges : Were the sums of money, or any part thereof, due on the said notes, liable to the said attachment, and bound thereby in the hands of the defendant?   Or, is he bound to pay the plaintiffs in these causes, notwithstanding the said attachment, and proceedings thereon, the amount of the said notes, or any part thereof ?   After an opinion shall be given on these questions, it is agreed, that the court shall be authorized to give such judgment in the several actions, as the facts here stated, and as the facts *that shall be brought forward, under the subjoined agreement, shall induce them to deem right."

*49]

   The case was argued by *Ingersoll* and *Dallas*, for the plaintiff, and by *Lewis* and *E. Tilghman*, for the defendant.

   For the plaintiff, *Dallas* premised, that the case admits all the facts essential to constitute a legal right of recovery : the note was originally issued for a valuable consideration : it was delivered in New York ; all the parties to the note and the attachment, except Bingham, are citizens of New York or Massachusetts ; it was attached before it was due ; the note vested

Ludlow v. Bingham.

in Duer by the delivery, and was afterwards divested for a valuable consideration, without notice of the attachment, by delivery and without Duer's indorsement; and promissory notes are on the same footing in New York as foreign bills of exchange. Whether, then, we consider, 1st, the nature of the contract between the original parties to the note : or 2d, the operation of the transfer, by delivery, from Duer to the purchasers of the note, the plaintiff is entitled to recover.

1st. The original contract was an agreement by Bingham, to give his own note, payable to Knox, or order, indorsed in blank by Knox, to Duer; and such a note is transferable merely by delivery. (Doug. 733-9.) This quality of transfer by delivery, was the essence of the contract; so that the person holding the note, on the day of payment, might be entitled to receive the amount. So long as it remained in the hands of Duer, it was susceptible of such a transfer; the right could not be changed, modified or defeated by Bingham himself; and though a creditor of Duer's might attach a debt due to him, he could not alter the conditions of the contract on which the debt arose; on the one hand, to release Bingham from the obligation of those conditions? or, on the other hand, to injure him for performing them.

But the place of negotiating the contract was New York, and the note was actually delivered there. The law of New York, therefore, is to be regarded in construing the contract and obligation of the parties. It is true, that the note is dated at Philadelphia, and is made payable at the bank of the United States : but Philadelphia merely designates the place of the drawer's residence; the note is not payable at his house; and being payable at the bank of the United States, does not necessarily make it payable in Pennsylvania. (1 U. S. Stat. 195.) The note never passed from the maker, in Pennyslvania; but continued in his hands, in the nature of an escrow, until it was delivered in New York. The delivery there first gave life to the note. It was, of course, contemplated (as the event has proved) that the note should be negotiated where it was delivered; that it should circulate there, until the day of payment; and that, on the day of payment, it should be presented at the bank of the United *States. Referring, [*50 therefore, to the *lex loci* as our guide, a promissory note must be regarded as a foreign bill of exchange, which can never be affected in the hands of a *bonâ fide* indorsee, on account of any circumstance, not appearing on the face of the instrument itself. 2 Dall. 396.

But even considering Philadelphia as the place of executing the contract, what would be the effect? It is the place where Bingham is to pay, according to the terms of the contract; that is, to pay to any *bonâ fide* holder by the indorsement of Knox, and the delivery of Duer; so that it could not be ascertained to whom he was debtor on the note, until the day of payment. There is no analogy between the present case and the case of *McCullough* v. *Houston*, 1 Dall. 453.[1] There, the equity allowed was between the maker and payee, arising on a note, which was not like a foreign bill of exchange, but was of a restricted negotiable character, under an act of assembly. Even if this had been strictly a Pennsylvania transaction, Ludlow would only have taken the note, on the principle of *McCullough* v. *Houston*, sub-

---

[1] The case of McCullough *v.* Houston has been subsequently overruled; see Bullock *v.* Wilcox, 7 Watts 329.

ject to the equity exist ng between Bingham, the maker, and Knox, the payee. Besides, the court have repeatedly decided, that the principle of that case did not apply to accommodation notes. It is likewise to be observed, that by the act of assembly, the maker is liable for no more than is due upon the note, at the time of the first assignment ; and there is no question in the present case as to the amount, but merely as to whom the amount is payable.

2d. The operation of Duer's transfer by delivery is conclusive. It is a great ruling principle, that circumstances existing between parties to a contract shall not affect the rights of third persons. Nothing that passed between Bingham and Duer, which the face of the instument does not show ; no right which Fish acquired against Duer, ought to affect Ludlow, without notice expressed or implied. A latent bar ought never to impeach the validity of an apparently good transfer of negotiable interests. 1 Loft's Gilb. Ev. 194–5. On the face of the note, the contract of Bingham has no relation at all to Duer ; it does not appear, that Duer was ever interested in it ; and though it may be presumed, that the first purchaser, who took the note by Duer's delivery, was apprised of the fact, the presumption will not in any degree apply to the plaintiff. The case admits, indeed, that there was no express notice of the attachment, and there is no ground to argue an implied notice from the record : for even if a citizen of New York, purchasing a note or bill of exchange in New York, is bound to respect the laws of Pennsylvania, and to examine the records of all our courts, before his purchase, to ascertain whether an attachment has not issued against every indorser of the note, what was there that could lead to such an examination, in relation to Duer, who is not party to the note, and might be an utter stranger to the present plaintiff ? Again, if notice is to be presumed from the *lis pendens, it applies to a negotiation in London or Amsterdam, as well as in New York ; to a bill of exchange, or any other contract, as well as to a promissory note ; and to a negotiation through a hundred persons, merely by delivery, as well as to such a negotiation by an individual. It is obvious, therefore, that the credit and facilities of commerce would be destroyed, should such a doctrine prevail.

The consequences of allowing the attachment as a bar would, likewise, be peculiarly unjust and injurious to the present holder of the note, who did not take it on the credit of Duer, and to whom Duer is in no wise bound. If, indeed, payment to Fish is a good payment of the note, it is a payment by the maker ; and, of course, it extinguishes all remedy against the indorsers, whose undertaking is merely a collateral one, to pay on the maker's default : so that the plaintiff, the last indorsee, taking the note, perhaps, on the credit of the indorsers, more than on the credit of the maker, is deprived of every security, without any imputable *laches* on his part. But a fair holder, for a valuable consideration, of a bill of exchange, or note payable to bearer, is protected even against the true owner, who has been robbed, or has lost the instrument. 1 Burr. 452 ; 3 Ibid. 1516, 1524 ; 1 W. Bl. 485 ; 4 Bac. Abr. 705–6. The attachment cannot surely amount to more than a legal assignment : let it, therefore, be supposed, that Duer had assigned the note to Fish, with notice to Bingham ; still, the plaintiff, a purchaser of a negotiable instrument, for a valuable consideration, without notice, would be entitled to recover. Or, let the stronger case be supposed,

Ludlow v. Bingham.

that on such an assignment, the note itself had been delivered to Fish, but that he had lost it, or had been robbed of it, that Duer had found or had stolen it, and afterwards had sold it, the purchaser would be entitled to receive the money from Bingham, and not the assignee. The rule is exemplified in the fullest manner, by considering the note as payable to bearer; for unless Duer keeps it until it is due and payable, he is not the bearer contemplated by the contract; there is no engagement to pay him at all. Though, therefore, our law permits the attachment of debts due and payable, it is manifest, that unless Duer held the note until it was actually due, it could not be payable to him, and if not payable to him, it could not be attached as his debt. If the instrument of contract had expressly provided, that something being done by a third person, the debt should become the property of that third person, when the act was done, Duer's interest must surely escape, and nothing would remain upon which an attachment against him could operate. Though not by the words, yet, by the nature of the contract, the same effect is produced: for, a third person being the bearer on the day of payment, and presenting the note, at the place of payment, the contract is to pay him; and every antecedent transmissible interest, of which Duer was possessed, is effectually extinguished.

*For the defendant, *E. Tilghman* and *Lewis* (a) contended, that [*52 Fish having attached, while the note was in Duer's hands, obtained a legal lien upon the money mentioned in it; although the money was not then due from the drawer, nor had the note ever been in the possession of the attacher; and that having pursued his lien, without *laches*, he is now entitled to the money. The general principle of the attachment law, is clearly in favor of Fish; and his claim must prevail, unless the plaintiff in error shows, that the note was a species of property not liable to an attachment.

In attempting to maintain this exemption from attachment, it has been urged, that the note is subject to the laws of New York, where promissory notes are upon the same footing with bills of exchange; and therefore, it was not attachable: but the fact, and the inference deduced from it, are alike denied. The note was executed at Philadelphia; it is dated there; it was there indorsed by Henry Knox; and it is payable at the Bank of the United States. It is true, that the note was delivered to Duer, in New York, agreeable to Bingham's contract; but Duer well knew that it had been previously executed in Philadelphia, and by the delivery in Philadelphia, Knox's indorsement took effect. An express stipulation, on the face of the note, made it payable at the Bank of the United States; and it is an established principle, that a contract for the payment of money is to be governed by the laws of the place where it is payable. Prec. in Chan. 128; 2 Burr. 1083-4; 1 W. Bl. 258-9. It is not a sufficient answer, that the Bank of the United States is not permanently fixed at Philadelphia; for the parties to the contract, in making it the place of payment, considered it as at Philadelphia; and there could be no idea of a removal of the bank, while Philadelphia continued the seat of the federal goverment; inasmuch

---

(a) *Tilghman* having embraced in his argument on the present occasion, all that had been suggested by *Lewis* in the supreme court, the latter declined entering again into the discussion, on the writ of error.

Ludlow v. Bingham.

as it is expressly provided, that the officer at the head of the treasury department shall be furnished with weekly statements of the affairs of the institution, and should be entitled to inspect the general accounts in relation to such statements. (1 U. S. Stat. 195, § 7, art. 16.) The place of payment was evidently fixed for the maker's convenience : and although, if there is a place appointed for payment, a personal application need not be made to the maker of a note (2 Hen. Bl. 509), yet, stipulating that payment should be made at the Bank of the United States, shows that the law of Pennsylvania was to furnish the rule for construing the legal effect of the contract.

Again, it is urged, that the note was in the nature of an escrow, until it was delivered to Duer, at New York ; and that receiving its life in New York, it must be governed by the law of the place of *its existence.
*53]      But the note is payable in four years from its date ; and therefore, even considering it in the nature of an escrow, when the condition was discharged, it took effect, with relation to its date and execution, in Philadelphia. There is nothing to show, that with regard to this note, more than with regard to any other note executed and payable in Philadelphia, but delivered to the indorsee in New York, it was in the contemplation of the parties, that New York should be the scene of negotiation. It is in vain for the counsel to assert, that it could not have been put in circulation at New York, with a view to the laws of another state ; for the date of the note, and the place prescribed for its payment, are premises from which the legal inference is insurmountable, that the law of Pennsylvania was contemplated. Let it be supposed, that on the day of payment, Bingham had tendered the money at the Bank of the United States, when no person was ready to receive it : the tender, if legal, would discharge him from any claim for future interest ; but by what law would the validity of the tender have been tried ? Or suppose, that the note had been invalid by the law of Pennsylvania, could it have been rendered valid by reference to the law of New York?

It has been objected, however, as another ground of opposition to the lien of the plaintiff in the attachment, that even an attachment cannot prevail against the *bonâ fide* holder of the note, for a valuable consideration, and without notice : while it remained in the hands of Duer, the adverse counsel admit, that it was subject to an attachment ; but they contend, that the defendant in the attachment might defeat the lien, whenever he pleased, by the mere delivery of the note. It will hereafter be shown, however, that the concession and the argument cannot be reconciled. But the corner-stone of the defence is, that notes of this description are to be governed only by what appears on the face of the paper ; and this, undoubtedly, is the law in England (whence the authorities have been adduced), except as to attachments. In Pennsylvania, however, the face of the paper is not the criterion, on which a *bonâ fide* purchaser is to judge. The distinction arises on this ground, that in England, the holder of a promissory note is not considered as an assignee, but in Pennsylvania he is so considered (Doug. 614), and although an indorsee, in England, is discharged from all equitable circumstances existing between the original parties, which do not appear on the instrument itself, an assignee of a note, in Pennsylvania, is bound to resort to the maker, to know whether there is any defence, equitable or legal. Showing, then, that the face of the note is not the criterion, we

46

Ludlow v. Bingham.

destroy the very foundation of the plaintiff's claim. That the indorsee takes the note subject to all equity between the drawer and indorser has been expressly adjudged. (1 Dall. 442–4.) The negotiability of the note is qualified, not absolute. The first indorsee, indeed, is as innocent as any subsequent one; *and if the equity of the maker's defence against the indorser is to affect the first indorsee, there can be no just reason [*54 why it should not equally affect the second : the face of the note is the same in the one case, as in the other ; the second indorsee can recover no more from the maker than the first ; and it may as fairly be contended that a payee could defeat an attachment, by indorsement, as an indorsee, by delivery.

It is asked, whether it is reasonable to expect that the purchaser of the note in market, should inquire after attachments, or liens against Duer, whose name does not appear on the note ? And yet the plaintiff himself relies on the supposed terms, on which the note was delivered to Duer in New York. But the fact is, that the note came to Duer, for a valuable consideration, as a common note, not merely as an accommodation note ; and our argument is, that the face of the note affording no criterion to protect the holder from a set-off, or attachment against Duer, it was incumbent on the person purchasing it, to apply to the maker for information, not, particularly, as to the right of Duer, but, generally, as to the validity of the note.

The adverse counsel urge, that if payment by Bingham to Fish will be good, then the note will be extinguished, and the holder can have no remedy against any of the indorsers. But might not each indorser recover from the person with whom he dealt, in an action for money had and received? At all events each party to the note runs his risk ; it is nothing more than the risk run in the case of notes given in England, upon usurious and gaming contracts ; nor is it harder than the operation of the principle in *Mc Cullough* v. *Houston*, which would have produced the same decision, had there been twenty indorsers on the note then in controversy.

That Fish's right could not be stronger, as plaintiff in an attachment, than as the assignee of Duer, is a position not true to every intent. For instance, Fish might attach the debt before it was due. Again, in the case of an assignment, he would be guilty of *laches*, and ought to answer for not taking possession of the note, or for suffering it to be lost or stolen ; but from the very nature of the attachment (a hostile process against Duer), Fish could not obtain the possession of the note, and the law will aid and supply the want of it. Nor is it correct to say, that Bingham was a debtor to no man, until the day of payment ; and then only to the bearer of the note ; for the obligation of the maker was coeval with the execution of the note, which was *debitum in præsenti, solvendum in futuro ;* and a debt of that description is clearly attachable (2 Dall. 211). Though the maker is guilty of some negligence in making a payment, without indorsing it on his note ; yet, even in his case, it has been shown, the payment will be allowed in Pennsylvania against a *bonâ fide* holder, without notice : and, surely, the case against *the garnishee is much stronger, the plaintiff in the attachment being in the prosecution of a legal right, and founding his [*55 demand against the garnishee upon the positive provisions of the act of assembly, which, though it is some respects analogous, in others, extends

Ludlow v. Bingham.

further than the custom of London.  The words of the original act speak only, it is true, of goods, chattels and effects; but they were always construed to include debts, and even lands; and the supplement expressly extends to the goods, chattels, moneys, effects and credits of the defendant: 2 Dall. Laws, 733.  The attachment, *ipso facto*, secures the effects attached, to abide the judgment of the court: 1 Ibid. 60, edit.  The words of the domestic attachment law (a law made *in pari materia*, and therefore, to be regarded on the present question of construction) expressly recognise "lands, goods, chattels and effects," as objects of attachment; and among the powers vested in the auditors under such attachment, they are authorized "to grant and assign, or otherwise to order or dispose of, all or any of the debts due, or to be due, to and for the benefit of the said defendants (in the attachments) to the use of their creditors.  And that the same grant, assignment or disposition of the said debts, so to be made, shall vest the property, right, and interest thereof, in the person or persons, to whom it shall be so granted, assigned or ordered by the auditors; so that such assignees may sue for and recover the said debts, in their own names, and detain the same to their own use.  And that after such grant, assignment or disposition, made of the said debts, neither the defendants, nor any other to whom such debts shall be due, shall have power to recover the same, nor to make any release or discharge thereof."  (1 Dall. Laws, 194–8, § 2, 7.)  The domestic attachment has, indeed, the effect of a bankruptcy; but if the plaintiff's doctrine is true, a bankrupt's agent may effectually, by mere delivery, pass away notes indorsed in blank.

In Carthew 26, it is said, that bills of exchange are attachable, according to the custom of London; and the adverse counsel admits, that the note was attachable, while it remained in the hands of Duer.  But if so, how can the attachment be dissolved, without appearing to it, on the terms of the law?  There is no *laches* on the part of the plaintiff; and if the note could be attached at all, it must be effectually attached.  It is idle to allege, that the success of the attachment must depend on the note's remaining with the defendant, until the attachment had run its course.  Suppose, a judgment had been obtained against the garnishee, before the note was due, with a stay of execution until it became due, could this lien be defeated by a subsequent sale and delivery of the note?  Suppose, a suit instituted by the indorsee of a note against the maker, and the note afterwards lost or stolen; would the claim of a *bonâ fide* purchaser, in such cases, supersede the suit, or prevail against the plaintiff in it, after he had *obtained a judgment?  Suppose, a bill of exchange protested for non-acceptance, a suit and judgment upon it, and afterwards, but before the day of payment, it was lost; a bill may be negotiated, after such a protest (2 Dall. 396), and yet, would a purchaser be preferred to the plaintiff in the suit, or could he recover a second time from the drawer?  The attachment ought, in short, to be regarded in the nature of a suit brought by Duer himself.

The hardship of the case is not so great, nor so unprecedented, as to require an extraordinary interposition of the court to change or modify, on equitable principles, the operation of a positive law.  In England, notes and other securities, given upon usurious or gaming considerations, are void in the hands of a *bonâ fide* holder, for a valuable consideration, without notice, even as against the maker, who was accessary to the injury and embarrassment by

48

Ludlow v. Bingham.

issuing the note. In those instances, as well as in the present instance, no warning appears on the face of the paper; and the bar is, emphatically, a latent bar, no record existing by which it could be traced or ascertained. Is it not as reasonable, as just, that the attachment should operate in favor of a *bond fide* creditor of Duer, who had no power to obtain possession of the note, as that the original taint in the consideration of a gaming or an usurious contract, should operate in favor of a party to the illegal transac· tion?

Upon the whole, Fish has attached, when the property and the posses sion of the note, were both in Duer; and his opponents must convince the court, that an attachment, once operative, can be legally done away, without some *laches* or relinquishment on his part.

*Ingersoll*, for the plaintiff in error, in reply.—The question under consid-ºration is novel, curious, and in its consequences, most extensive: it is not too much to say that the negotiable paper of Philadelphia, depends, for its circulation abroad, upon the event of the cause. The subject may be con-sidered, with a view to support two positions; 1st. That the note, under the circumstances of the case, was negotiable, the property of which, after the indorsement in blank, passed by delivery, as a bill of exchange payable to bearer. 2d. That negotiable paper of this description, is not within the spirit, intent and meaning of the attachment law of Pennsylvania: especially, when put into circulation and negotiated out of the state.

1. The note passed by delivery, as a bill of exchange, payable to bearer. Under this general proposition, we derive the title of the plaintiff immedi-ately from Henry Knox, not through William Duer; but against the propo-sition, several objections have been urged. It is said, that in Pennsylvania, promissory notes are not within the law-merchant; that they are regulated by the common-law principle, in pursuance of which every assignee takes the instrument *subject to every equitable consideration that [*57 affected the assignor; that the act of assembly places notes on a footing with bonds, enabling the indorsee to recover only what shall appear to have been due at the time of assignment; and that these doctrines have been exemplified and enforced by legal decisions. But the answers to these suggestions, will satisfactorily show, either that they are not founded in fact, or that they are inapplicable on the present occasion.

Promissory notes, in Pennsylvania, are governed by the statute of Anne, as far as respects the payee's remedy against the maker, in an action upon the notes themselves; and therefore, they are within the law-merchant. The act of assembly, when it provides a further remedy for the indorsee, implies and recognises the law to be so. At common law, a promissory note could not be declared on; all the declarations on record upon promissory notes, state the liability as arising under the statute of Anne; and the distinction in this particular has been repeatedly recognised by our courts. The statute of 9 & 10 *Wm. III.*, c. 17, placed inland bills of exchange upon a footing with foreign bills; and the statute of 3 & 4 *Anne, c.* 9, placed promissory notes upon a footing with inland bills: after an indorsement, therefore, promissory notes are to be regarded as foreign bills of exchange. It is true, that our act of assembly limits the maker's responsibility to an indorsee, by the measure of his responsibility to the payee; but nothing can be more

Ludlow v. Bingham.

extravagant or unjust, than the deductions which have been attempted, at different times, from that provision, as recognised in *Mc Cullough* v. *Houston*, 1 Dall. 444. It was once, indeed, introduced as an authority to release the friendly indorser of an accommodation note, from all obligation to pay the indorsee : but the court declared, that the determination only applied to the case of a maker's being cheated by the payee, when, as in the instances of gambling and usurious notes in England, he should not be made liable to the indorsee. What analogy, however, can be suggested between *Mc Cullough* v. *Houston*, and the present case ? The defendant is not called on to answer the holder of the note further than if the payee was plaintiff ; there is no idea, that the defendant has been defrauded ; the consideration for which the note was given, has not failed; the defendant has made no payment ; he owes the full nominal amount of the note ; and, in short, he is a mere stake-holder. In the cases that have been hitherto decided, the *dramatis personæ* were the maker, the payee or indorser, and the indorsee : here, a new corps of actors appears, the creditors of an intervening holder of the note, as plaintiffs in the attachment. In those cases, there was fraud ; in the present case, the contest is between an innocent holder of the note, and a claimant by legal process. In those cases, if the remedy failed against the maker, it might be pursued against the indorser ; in the present case, the debtor in the attachment is not an indorser, the person who *sold to the plaintiff, *58] is not an indorser ; and, so far as appears by the state of the case, we are without remedy, unless this action succeeds.

The nature of the promissory note in question remains, then, to be ascertained, on abstract principles, public policy, general convenience, the reason of the case, and the design of the attachment law. On the face of it, the note appears calculated for general circulation, unaffected by local circumstances : it is payable at the Bank of the United States ; and that institution was not stationary, for its commencement of business only was fixed at Philadelphia. A demand at the Bank of the United States, wherever its business was transacted, when the note became due, was the only condition that remained to be performed. (2 H. Bl. 509.) The note took effect and became operative by the delivery only, which was in New York. (*McKim* v. *Elton*.) (a) And there, promissory notes are on footing with bills of exchange. It was the intent and meaning of the parties that the note should circulate there, and be governed by the law of that state : *conventio vincit legem*. (*Reed* v. *Ingraham*, *post*, p. 169.) The act of assembly, indeed, cannot refer to notes delivered and put in circulation out of Pennsylvania ; and surely, the objection arising under our local law, ought not to proceed from the plaintiff in the attachment, a citizen of New York, a party to, and bound by, the laws of that state. The note was originally in the form

---

(a) *McKim* v. *Elton*. This case was decided in the supreme court, some years ago. The defendant, proposing to give a preference to the plaintiff, in an arrangement with his creditors, drew a note in the plaintiff's favor, and signed it; but doubting afterwards the propriety of the measure, he put the note into his own desk. The plaintiff heard of this circumstance, and applied to the defendant's wife, in the defendant's absence, for the note; who having a key of the desk, unlocked it, and delivered the note to the plaintiff. It was adjudged, that the mere signing of the note, without a delivery by the maker to the payee, gave it no effect; and that **the plaintiff could not take advantage** of a possession surreptitiously obtained.

Ludlow v. Bingham.

of a bank post-note; and after the indorsement in blank, it assumed the character of a common bank-note. It has, likewise, all the distinguishing characteristics of a bill of exchange: it is entitled to three days' grace; the indorser is answerable to the indorsee, without express covenant, though the note be forged; and immediate notice must be given to the indorser, if the note be dishonored.

2. But negotiable paper of this description is not within the spirit, intent and meaning of the attachment law of Pennsylvania. The opposite doctrine would render our act of assembly a perfect snare; and inevitably prevent the extra-territorial negotiation of any note or bill of exchange, on which any citizen of Pennsylvania was maker or acceptor. For, if Duer had purchased the note one hour, and sold it the next, after the attachment was laid, the rule contended for would equally apply. Such is the absurd and monstrous inconvenience to which this pretension leads, that neither the person *who sells, nor the person who buys, can know the injustice that they  [*59 are concurring to practice: the one has sold what he had no right to part with, and the other has paid a valuable consideration for nothing; and yet, the former shall be innocent, and no negligence can be imputed to the latter! The *lis pendens* has no extra-territorial operation, and cannot be regarded as implied notice to citizens of other countries.

But the attachment cannot, surely, give a better right to Fish to claim payment from the maker, than a sale for value, with notice to the maker, though without delivery of the note; or (in the cases already put), a sale and payment, with delivery of the note, which is afterwards, however, lost or stolen, and negotiated *bonâ fide*. By the act of assembly, debts may be attached, and so may money: but suppose a sum of money had been specifically attached, and the garnishee had afterwards paid it away, could the money have followed into the hands of a *bonâ fide* receiver? If goods, indeed, are attached, and afterwards lost or stolen, they may be pursued, and if found again, will still be liable to the attachment; but not so, in the case of money; a distinction which exemplifies and establishes the rule on our part. For notes payable to bearer are regarded as money; and the reason applying equally to both objects, the law must be the same. Nor can an attachment alter the nature and conditions of a contract; as, in the present instance, the negotiable nature of the instrument, and the condition that it shall pass by delivery. It is the same thing, whether the condition is expressed by the parties, or implied by law. An attachment of real estate would not prevent a springing use, or a resulting trust; the estate might, therefore, change its owner, pending the attachment. And why not the property of a note, liable, by the nature of the contract to this contingency, that it shall cease to represent a debt owing to Duer, and become a debt owing to Ludlow, if Ludlow is the bearer on the day of payment? Debts, in general, are not liable to such contingencies and conditions; they are not negotiable; and therefore (though it is only by implication our law is extended to them), they may with certainty be subjects of attachments. But even stock-contracts, or bonds payable to a man or his assigns, cannot be affected by an attachment made in another state.

Does it, then, require a greater latitude of construction, than is authorized by ] recedent, to exempt negotiable paper, circulating abroad, from the meaning and operation of the attachment law? It is not to control our act

Ludlow v. Bingham.

of assembly, by the law of New York, but to give to our act a reasonable interpretation. While paper credit remains in use, it should be regulated by plain and uniform rules (1 Dall. 270); and that the *bonâ fide* purchaser should only be affected by what appears on the face of the instrument, is the characteristic of negotiable paper. (1 Loft's Gilb. 195; *2 Dall. 396.)

*60]

The departure from the strict terms of a law, in a variety of other instances, will authorize a much greater latitude of construction than the present case requires. The cases of the sick sailor, who remained in a foundering ship, of the surgeon who bled a man in the street, and of ecclesiastical leases, in England (1 Bl. Com. 60); as well as the case of unrecorded mortgages here (1 Dall. 434), are strong examples. But construction on the one side or the other forces itself upon the court. An indorser is guarantee for the payment of the note to the holder, if it is not paid by the maker; a payment to one not the holder, is not an exception known to the law-merchant; and can a municipal regulation alter the general law, operating on a negotiation out of the state? A statutory assignment by bankruptcy (which is an assignment of rights of action, and stronger than an attachment) will not enable the assignees to claim from the maker against a *bonâ fide* holder. A judgment in an attachment is not conclusive evidence of a debt out of the state, in which it is rendered (1 Dall. 261); and the death of the defendant, after interlocutory judgment, destroys the attachment, because there is not any party in court; because executors or administrators are not liable to enter special bail; and because no foreign attachment can issue against executors or administrators. 1 Dall. 248.(*a*)

The attachment law of Pennsylvania is a copy, in some measure, from the original mode established as the custom of London; and that the currency of bills and notes in London (which even pass under a bequest of money in a will (1 Burr. 358; 3 Ibid. 1516, 1524–5, 1530; 1 W. Bl. 485; 4 Bac. Abr. 705–6; 2 Burr. 675, 1225) should be impaired and endangered in this way, is so improbable, that the most authoritative precedents are necessary to induce belief. A precedent is, however, cited, but of so light a texture, that it will hardly bear examination: it is cited, too, against a *bonâ fide* holder, who never knew of Duer's interest or possession of the note; who may fill up the blank indorsement as he pleases (1 W. Bl. 296), who may deduce his title immediately from Knox (2 Burr. 1225, 1216), and who, in that way, can never be injured by anything which Duer has done. The solitary precedent is cited from Carthew 26, where it is said, that a bill of exchange is liable to attachment. But this was not the point of the cause, and ought, therefore, to be disregarded (1 Burr. 526; 3 Ibid. 1730); the only point turning on the question, whether a prohibition ought to issue. The debt due, and the debt attached, were both upon bonds, not on a bill of exchange. (Holt 179.) The incidental observations relied *on, did not

*61]

proceed from the court, or any member of it; and the same case is reported in three other books, of superior character, without a word of a bill of exchange, even by way of allusion, from the court, the counsel or the

---

(*a*) The defendant died after final judgment, but before the money actually paid by the garnishee: *quære*, the effect of his death, since the attachment might be dissolved by entering special bail, at any time before such payment? This point was stated, but not relied on, by the plaintiff's counsel.

Ludlow v. Bingham.

**reporters.** (Holt 179; 1 Show. 9; Comb. 109.) But even this precedent might be explained, consistently with our doctrine, by supposing it meant, that a bill of exchange might be attached, after it was due; for if negotiated after it was due, it can only be in a limited degree, liable to all exceptions as paper not negotiable. (2 Dall. 396.)

After consideration, the unanimous opinion of the Court was delivered, by the Chief Justice, who, having stated the case, proceeded as follows:

McKEAN, Chief Justice.—The first inquiry, which it is necessary to pursue, is, where was the note in controversy made, in Pennsylvania, or in New York? For, whether the act of assembly, relating to promissory notes, is to be introduced or excluded, in forming our judgment, depends upon the answer, that shall be given to this preliminary question.

It appears, then, that although the note was signed in Philadelphia, it was not delivered in Pennsylvania; but that the delivery was made by the order or direction of Henry Knox, the payee, to William Duer, in the city of New York, in pursuance of a contract, and for a valuable consideration. It is certain, that the bare signing of a note will not give it efficacy. It may be signed, with a view to deliver it to the payee, on his complying with some previous stipulation; so that, in case of a refusal, it would become useless, and might be cancelled by the drawer. A note is not, therefore, obligatory and valid, until it has been actually delivered to the party, for whose use it is drawn; and as it receives its life, existence and negotiable character, at the place where it is so delivered, the law of that place must regulate all its subsequent operations. Hence, we consider the present note, as having taken effect in New York, as being liable to the *lex loci* of that state (whether depending on positive statutes, or the adoption of the general commercial law), and as exempt from the provisions of our act of assembly, by which an indorsee is liable to all the equity that the maker could enforce against the payee.

The note having been thus paid or delivered in New York, was deemed, by the law of that state, to be as negotiable as a foreign bill of exchange; and it is the nature of a bill of exchange, when indorsed in blank, to pass from hand to hand, by mere delivery, like bank-notes payable to bearer. It is true, that the negotiability of the bill may be restrained by the qualified terms of an indorsement; but there must be express words to produce such an effect. In the present case, there was no restraint upon *the negotia- [*62 bility of the note; and in a due and fair course of circulation, it was delivered to Duer, he sold to a *bonâ fide* purchaser, that purchaser sold it to others, until at last, it became the property of the plaintiff. While, however, it was in the hands of Duer, an attachment issued at the suit of his creditors, and the maker of the note was summoned as garnishee.

And here the second great question arises, whether, under these circumstances, the money, due at that time, but not payable until long after, on a negotiable note, could be attached as the property of Duer, so as to defeat a subsequent purchaser, *bonâ fide*, and for a valuable consideration? In England, I believe, there would be no hesitation in deciding, that it could not. On the paper credit of that nation, much of its power and prosperity (if not its very existence) will be found to depend; and therefore, everything that can impede or injure the circulation of bills of exchange, promissory notes

53

and bank-notes, is anxiously guarded against. The situation of this country, however, is not the same ; so that the legislature of Pennsylvania has not found it necessary to hold in equal respect the negotiability of promissory notes. When the act of assembly was passed, promissory notes were little used ; they were given for small debts ; and they seldom passed out of the hands of the payee, before payment. The object of the act was, simply, to enable the indorsee to sue the maker in his own name ; but in giving this benefit, it was expressly provided, that he should recover no more than was due at the time of the indorsement. This, therefore, lets in the equitable claims of the maker against the payee, when he is sued by the indorsee ; and even in England, there is no doubt, the consideration of a note may be inquired into, in an action between the payee and the maker.

The present case, however, arises from a commercial transaction in the city of New York, where the note was regarded in the light of a foreign bill of exchange. There is no judgment, or authoritative *dictum*, to be found in any book, that money due upon such a negotiable instrument, can be attached before it is payable ; and in point of reason, policy and usage, as well as upon principles of convenience and equity, we think, it would be dangerous and wrong to introduce and establish a precedent of the kind. To adjudge that a note, which passes from hand to hand as cash; on which the holder may institute a suit in his own name ; which has all the properties of a bank-note, payable to bearer ; which would be embraced by a bequest of money; and which is actually in circulation in another state ; should be affected in this way, by a foreign attachment, would be, in effect, to overthrow an essential part of the commercial system, and to annihilate the negotiable quality of all such instruments.[1]

It has been said, that the purchaser of the note (*toties quoties*) was bound to inquire into its validity, by applying to the maker before he bought it. But I cannot perceive the propriety, nor, indeed, *the utility, of imposing such a duty in this, or any similar case. The distance between the place of the maker's residence, and the place of the note's circulation ; and the frequency of the transfers of negotiable notes, payable at long dates, would render such a course highly inconvenient, if not impracticable ; while the information to be derived from it, could only assure the purchaser, that an attachment had not issued at the very moment of his application ; but could not protect him from an attachment which might issue in less than an hour afterwards, and sooner than his purchase could be accomplished.

*63]

Upon the whole, we are, unanimously, of opinion, that the attachment cannot be sustained ; and that the bearer of the note, on the day of payment, is entitled to recover the money from the drawer. The judgment for the defendant must, therefore, be reversed ; and judgment entered for the plaintiff.

SMITH, Justice.—The opinion of the court is certainly unanimous on the points that have been stated ; but I wish it to be remarked, that my concur-

---

[1] In Kieffer *v.* Ehler, 18 Penn. St. 388, it was determined, that a promissory note, not yet due, may be attached in the hands of the maker; but that such attachment will not prevail against a *bonâ fide* indorsee, before maturity, without notice. And see Hill v. Kraft, 29 Id 186.

Johnson v. Haines.

rence rests entirely on the particular circumstances of this case. The delivery in New York, which gave effect to the note, and introduced the law of that state as our guide, is exclusively the ground of my assent.

ADDISON, Justice.—To me, it would have made no difference, had the delivery and circulation of the note been entirely in Pennsylvania. It is expressed in commercial form, and was negotiable upon commercial principles. On general grounds, therefore, as well as for the particular reasons that have been assigned, I think, the judgment of the court is right: and I should be surprised to find any doubt upon the subject, in a great commercial city like Philadelphia.

SHIPPEN, Justice.—It is evident, that on the abstract question, the court do not agree ; nor is it necessary that they should, as we are unanimous in' the judgment pronounced, upon the grounds peculiar to this case. If, however, I were called upon to give an opinion, I should incline to the one expressed by Judge Addison.

The judgment below reversed ; and judgment to be entered for Daniel Ludlow, the plaintiff in error. (a)

---

(a) A question arose, whether this court should enter the judgment for the plaintiff in error, or merely remit the record to the supreme court, that the judgment might be entered there? In the present case, a decision was immaterial, as Mr. Bingham, being a mere stake-holder, was ready, at once, to pay the money, on the opinion which had been delivered; but as a precedent, it was thought important, and the court kept the point under advisement until the next adjourned session.

